UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL DUHS,

Petitioner,

– against –

MICHAEL CAPRA,

Respondent.

**MEMORANDUM, ORDER,
AND JUDGMENT**

13-CV-1056 (JBW)

**Appearances**

**For Petitioner:**

Norman Trabulus
Law Office of Norman Trabulus
345 Seventh Avenue, 21st Floor
New York, NY 10001
212-221-7811
ntrabulus@gmail.com

**For Respondent:**

Anne Elizabeth Grady
Richmond County District Attorney's Office
Appeals Bureau
130 Stuyvesant Place
Staten Island, NY 10301
718-556-7120
anne.grady@rcda.nyc.gov

New York State Attorney General's Office
alyson.gill@ag.ny.gov

Richmond County District Attorney's Office
appeals@RCDA.nyc.gov

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

**I.   Introduction** ................................................................................................. 3

**II.   Background** ................................................................................................. 7

  a.   Fact Summary ............................................................................................. 7

  b.   Procedural History ..................................................................................... 9

    i.   Conviction .............................................................................................. 9

    ii.   Direct Appeal ......................................................................................... 9

      1.   Appellate Division ............................................................................. 9

      2.   New York Court of Appeals ............................................................. 13

      3.   United States Supreme Court .......................................................... 18

    iii.   Collateral Proceedings ......................................................................... 18

      1.   Coram Nobis .................................................................................... 18

      2.   Section 440 Motion .......................................................................... 19

    iv.   Federal Habeas ..................................................................................... 19

      1.   District Court .................................................................................... 19

      2.   Court of Appeals for the Second Circuit ......................................... 21

      3.   United States Supreme Court .......................................................... 22

**III.   Second Petition** ........................................................................................ 22

  a.   Procedural Barriers ................................................................................... 22

    i.   Statute of Limitations ............................................................................ 23

      1.   Tolling the Statute Under AEDPA .................................................. 24

      2.   Equitable Tolling .............................................................................. 24

    ii.   AEDPA Standard for Second Petition ................................................. 25

    iii.   Exhaustion ............................................................................................ 27

    iv.   Preservation .......................................................................................... 27

    v.   Other Procedural Considerations ......................................................... 28

      1.   Section 440 Motion .......................................................................... 28

      2.   Rule 60(b) Motion ............................................................................ 29

      3.   Petition Directly to the U.S. Supreme Court ................................... 29

  b.   Substantive Arguments ............................................................................. 30

    i.   Weight of the Evidence ......................................................................... 30

ii.  Putting the Child on the Stand ......................................................................... 30

iii. Admission of Declaration "Babe put me in hot water".................................. 31

iv.  Ineffective Assistance of Trial and Appellate Counsel .................................. 31

**IV.  Conclusion** ....................................................................................................... 32

## I.      Introduction

This is a habeas corpus case.  Petitioner was convicted in New York State court of deliberately scalding a young child in a bathtub.  He was sentenced to twenty years in prison.

The key evidence came from a medical resident who interviewed the child after the event.  In response to the doctor's questions, the three-year-old boy stated "[The defendant] wouldn't let me out" of the bathtub (which had been partially filled with scalding hot water). Trial Tr. of Feb. 6, 2007, ECF No. 8-2, at 162:2-9.  The child's declaration was admitted through the doctor's testimony at trial over his attorney's objection.  *Id.* 162:2-15.  The only other significant evidence presented to prove that defendant intended to harm the child was the boy's declaration several hours after the incident that "Babe [defendant] put me in hot water."  Trial Tr. of Feb. 8, 2007, ECF No. 8-4, 341:2-3.  This declaration was admitted without objection through the child's 10-year-old cousin's testimony.  *See id.* 335:25-336:3; *id.* 336:20-337:3.

The child's hearsay statements were admitted even though he had been qualified by the trial court to testify without taking an oath.  Pretrial Hr'g Tr. of Feb. 2, 2007, ECF No. 8-1, at 366:15-367:2.  Neither the prosecutor nor the defendant called him.

This court concludes that a miscarriage of justice may well have occurred because of lack of sufficiently reliable evidence to convict.  Yet, the court has no jurisdiction to address the issue.  It was not raised in the petition and a second petition requires permission from the Court of Appeals for the Second Circuit and satisfaction of federal and State prerequisites.

Nonetheless, a "court faced with a record that raises serious issues as to the guilt of the defendant and the means by which his conviction was procured, yet unable to grant relief, is not obligated to become a silent accomplice to what may be an injustice." *Friedman v. Rehal*, 618 F.3d 142, 161 (2d Cir. 2010) (Korman, J.). *See also* Essay, *Every Day Is a Good Day for a Judge to Lay Down His Professional Life for Justice*, 32 FORDHAM URB. L. J. 131, 163 (2004) ("Duty of a Judge to Speak Out Against Unjust Laws"); Frank J. Battisti, *Remarks to the Akron Bar Association*, 18 AKRON L. REV. 353, 362 (1985) ("Courage in public life means not only the fortitude to withstand criticism and even outrage, but the strength as well to examine one's conscience and soul and to speak from the truth and conviction that we know lies deep within our hearts."); Charles E. Wyzanski, Jr., *A Trial Judge's Freedom and Responsibility*, 65 HARV. L. REV. 1281, 1299 (1952) ("[R]eservation in the opinion promotes the growth of the law in the court where it most counts. For if the criticism of the precedent be just, the appellate court will set matters straight, and any trial judge worthy of his salt will feel complimented in being reversed on a ground he himself suggested.").

The sole ground the petition pressed was a violation of the Confrontation Clause. The conviction was set aside because it violated that Clause. *Duhs v. Capra*, 83 F. Supp. 3d 435, 439 (E.D.N.Y. 2015).

The Court of Appeals for the Second Circuit reversed. *Duhs v. Capra*, No. 15-647, 2016 WL 482174, at *1 (2d Cir. Feb. 8, 2016). No direction was given on what action should be taken by this trial court to enforce the appellate court's mandate. *See* Mandate of Mar. 8, 2016, ECF No. 56. And the parties were mute on the form of judgment. *See* Order of Mar. 11, 2016, ECF No. 58; Letter of Mar. 15, 2016, ECF No. 59; Hr'g of Mar. 23, 2016, ECF No. 60.

For the reasons set forth below, the Clerk of the Court is directed to enter a judgment of dismissal of the petition. Though it would if it could, this court can grant petitioner no relief. The court previously indicated its conclusion that the conviction was dubious because of Constitutional defects. *See Duhs*, 83 F. Supp. 3d at 472; Order of Mar. 11, 2016 at 1-2.

It is unlikely that defendant can prosecute a second petition in a federal court based on the lingering question of due process. *See* Stephen I. Vladeck, *Using the Supreme Court's Original Habeas Jurisdiction to "Ma[k]e" New Rules Retroactive*, 28 FED. SENT. R. 225, 225 (2016) ("[R]oadblocks make it exceedingly difficult even for a prisoner with a patently meritorious claim for post-conviction relief based upon a new rule of constitutional law . . . to obtain such relief through a second-or-successive petition.").

Restrictions by statute and the case law have substantially reduced the jurisdiction of a federal district court to grant a writ of habeas corpus when the court concludes that a miscarriage of justice has occurred as a result of a federal Constitutional violation. *Compare* Jed S. Rakoff, *The Magna Carta Betrayed?*, N.Y. REVIEW OF BOOKS, Feb. 11, 2016 ("Congress, with the Supreme Court's acquiescence, has arrogated to itself the power to greatly limit the scope of habeas relief.") *with* PETER CHARLES HOFFER, WILLIAMJAMES HULL HOFFER, & N.E.H. HULL, THE FEDERAL COURTS 432 (2016) ("The 1996 Antiterrorism and Effective Death Penalty Act narrowed the grounds and time limits for state prisoner habeas petitions, supporters arguing that federal courts were unnecessarily injecting themselves into the business and infringing on the integrity of state courts.").

The current view of the Supreme Court is that only "testimonial evidence" implicates the Confrontation Clause; testimonial evidence is essentially a declaration resulting from an interrogation by the police to obtain evidence to be used in a possible subsequent prosecution.

*See Crawford v. Washington*, 541 U.S. 36, 51-52 (2004) ("The text of the Confrontation Clause . . . applies to 'witnesses' against the accused – in other words, those who 'bear testimony'. . . . Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard."); *Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015) ("[A] statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial.").

In the instant case, the Court of Appeals for the Second Circuit determined that the doctor's interrogation was primarily for the purpose of medical treatment and was not excludable. *Duhs*, 2016 WL 482174, at *3. It stated that the determination of the New York Court of Appeals that the child's statement was non-testimonial, and therefore did not implicate the Confrontation Clause, "cannot be held an unreasonable application of Supreme Court law." *Id.*

Before the recent change in the law of confrontation by *Crawford*, there would have been a substantial probability that the Confrontation Clause would have been relied upon to exclude the child's declaration for lack of reliability and on due process grounds. *See Ohio v. Roberts*, 448 U.S. 56, 66 (1980) ("In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.'"); *Idaho v. Wright*, 497 U.S. 805, 827 (1990) ("Given the presumption of inadmissibility accorded accusatory hearsay statements not admitted pursuant to a firmly rooted hearsay exception, we agree with the court below that the State has failed to show that the younger daughter's incriminating statements to the pediatrician possessed sufficient 'particularized guarantees of trustworthiness' under the Confrontation Clause to overcome that presumption." (internal citation omitted)). *See also, e.g.*, Margaret A. Berger, *The Deconstitutionalization of the Confrontation Clause: A*

*Proposal for a Prosecutorial Restraint Model*, 76 MINN. L. REV. 557, 612-13 (1992) ("A child's statement to a prosecutor or prosecutorial agent should not be admitted regardless of whether it is reliable or the child is produced, unless a contemporaneous recording is available. . . . In deciding the admissibility of hearsay statements, courts should pay attention to the government's role in creating those statements. Curtailing confrontation upsets the grand scheme of the Sixth Amendment because it prevents the prosecution's effect on evidence from being fully explored by a jury at a public trial.").

Before – and perhaps even after – *Crawford*, it might have been held that the child's declaration was not sufficiently reliable to satisfy the Confrontation Clause. *See Duhs*, 83 F. Supp. 3d at 465-69. But lack of probative force and due process was not raised in the current petition in this court or in the collateral attack on the judgement of conviction in the State court. *See generally*, Pet., ECF No. 1; Reply Br., ECF No. 34; Appl. for Writ of Error Coram Nobis, ECF No. 8-17.

For the reasons that follow, this court cannot now revisit the petition on the ground of lack of reliability or due process. It can only dismiss the case.

## II.     Background

### a.   Fact Summary

It is undisputed that on the morning of September 16, 2005, Duhs was at his girlfriend's home taking care of her three-year-old son, "Sal" Pierro. Reply Br. at 7-8. At the time, Sal's mother, Stacey Andersen, was at school. *Id.* at 9. The child suffered second and third degree burns on his legs from contact with hot water in the bathtub while he was under Duhs's care. *Id.* at 7. He was not treated for his injuries until Ms. Andersen came home at the end of the day and she and Duhs took Sal to the hospital. Opp. Br., ECF No. 7-1, at 2. On the way, Sal said, "Babe

put me in hot water." Reply Br. at 10. The child required reconstructive surgery for his injuries. Trial Tr. of Feb. 6, 2007 at 47:1-52:3.

According to Duhs's varying accounts of the event, he left the child unattended in the bathtub out of negligence, but with no intention of wrongdoing. Reply Br. at 10-11. The bathtub had irregularities, including rapid hot water flow at an excessive temperature, as well as a defective drain and overflow hole on the side of the tub opposite the faucet. *Id.* at 11-12; *see also Duhs*, 83 F. Supp. 3d at 442-45 (showing photographs of the tub). It appears from one of Duhs's statements to law enforcement that he turned on the hot water, Reply Br. at 10, although he also stated to a police officer that the child may have turned it on. Trial Tr. of Feb. 7, 2007, ECF No. 8-3, at 234:8-9. Duhs's story also shifted with regard to what he was doing when he left the child unattended, from fetching Sal's clothes, to answering the front door, to smoking a cigarette outside. Reply Br. at 11. The petitioner said he heard Sal screaming and rushed to the bathroom where he found the child's hand stuck in the overflow hole above the drain. *Id.* at 10-11. He said it was only when he was getting Sal out of the bathtub that he realized the water was so hot. *Id.* at 11. Duhs called Ms. Andersen to tell her Sal had been scalded, but he said the child was "fine" and "running around playing." Opp. Br. at 2.

At trial, the State's theory was that Duhs intentionally plunged Sal's feet into the tub full of hot water to harm him, ostensibly as a form of punishment. *Id.* at 1-2. The prosecution focused on the testimony of the medical resident, Dr. Tricia Gold, who treated Sal. Dr. Gold testified at trial that in answer to her questions, "Why did you get into the tub?" and "Why didn't you get out?" Sal replied, "He wouldn't let me out." *Id.* at 2. It was largely on the basis of this statement that the State sought to prove the intent element of First Degree Assault. *See* New York Penal Law ("N.Y.P.L.") § 120.10(1) ("A person is guilty of assault in the first degree when

. . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."); *compare* N.Y.P.L. § 260.10(1) ("A person is guilty of endangering the welfare of a child when: 1. He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health."). Other key pieces of evidence included: Sal's hearsay statement on the way to the hospital, "Babe put me in hot water," which was admitted without objection, Trial Tr. of Feb. 8, 2007 at 341:2-3; pediatric expert testimony that the child had immersion burns, not splash burns, Trial Tr. of Feb. 7, 2007 at 217:6-220:25; and bruising on Sal's torso, Trial Tr. of Feb. 6, 2007 at 68:11-69:3.

      b.  Procedural History

           i.  Conviction

A jury convicted Duhs of First Degree Assault and Endangering the Welfare of a Child. He was sentenced to twenty years in prison and five years of post-release supervision on the assault count, and a concurrent term of one year of imprisonment on the endangering count. A sentence for Assault in the First Degree "must be at least five years and must not exceed twenty-five years." *See* N.Y.P.L. § 120.10; *id.* § 70.02(3)(a). Duhs was sentenced on the far end of this range.

           ii.  Direct Appeal

                1.  Appellate Division

Duhs appealed his conviction in the Appellate Division of the New York Supreme Court, Second Department, on December 4, 2008. *See* Appellant's Br. to App. Div., ECF No. 8-6. He

did not appeal from his sentence although the Appellate Division has the power to review his

sentence.  *See* New York Criminal Procedure Law ("C.P.L.") 450.10(2).

On the appeal, Duhs was represented by Katherine Schaefer, Esq. of Appellate

Advocates.  Two arguments were raised: (1) the child's statement, "He wouldn't let me out," was

inadmissible hearsay that violated Duhs's rights under the Confrontation Clause; and (2) Duhs

was deprived of his due process right to a fair trial and effective assistance of counsel when the

court admitted prejudicial testimony from an expert, Dr. Stephen Ajl, that Sal's burns were

intentionally inflicted, because that invaded the province of the jury, and his attorney did not

object.  Appellant's Br. to App. Div. at 35.  While he did not explicitly raise an insufficient

evidence claim, Duhs did so implicitly when arguing that the two errors claimed could not be

deemed harmless:

> The main issue at trial was whether appellant burned Salvatore
> intentionally or whether the burns were accidental.  As discussed
> more fully above in <u>Point I</u>, other than the child's statement that
> appellant 'wouldn't let [him] out' of the bathtub, Dr. Ajl's testimony
> was the only evidence directly supporting the People's assertion that
> appellant had intentionally injured him.  In fact, much of the other
> evidence at trial supported appellant's explanation that the child had
> gotten burned accidentally.  Thus, it is apparent that the court's error
> cannot be deemed harmless.

*Id.* at 34-35.

Duhs moved to submit a supplemental brief with arguments that his appellate counsel had

declined to raise.  *See* Suppl. Br., ECF No. 8-8.  The State opposed the motion.  Opp'n to Suppl.

Br., ECF No. 8-9.  The Appellate Division denied it on February 18, 2009 without giving any

reason.  *See* 2d Dep't Order of Feb. 18, 2009, ECF No. 8-10.

Duhs filed a motion for reconsideration of the denial of leave to submit a supplemental

brief.  *See* Mot. for Recons., ECF No. 8-11.  In that motion, Duhs listed the grounds he wished to

include in his supplemental brief: (1) the trial court's permitting the State to resubmit the top

count of the indictment following dismissal violated C.P.L. 210.20(4) (limiting grounds upon which a court may authorize resubmission of a charge to a grand jury); (2) the trial court's denial of his C.P.L. 30.30(1a)(2a) (speedy trial) motion without a hearing was improper; (3) the trial court's denial of his motion pursuant to C.P.L. 210.20(6) (concerning the reduction of charges) was reversible error because the court relied on a lesser included count premised on the same conduct; and (4) the prosecution's submission of a higher charge not included in the original felony complaint to the grand jury following dismissal of the original indictment denied Duhs his due process rights. The State court record does not include a ruling, if there was one, but ostensibly there was a denial.

In its response to Duhs's original brief to the Court of Appeals, the State argued: (1) the admission of Sal's statement did not violate Duhs's confrontation rights because it was made in the furtherance of medical treatment and was not testimonial; and (2) Dr. Ajl's testimony was not objected to, and in any event, it was based on his expertise in child abuse beyond the awareness of the average juror. *See* Resp't's Br. to App. Div., ECF No. 8-7. The State also addressed the weight of the evidence – which it argued was overwhelming – in analyzing whether the two alleged errors were harmless:

> The court told the jury that they should evaluate the experts' testimony as they would any other evidence, and that they were free to accept or reject their testimony in whole or in part. Particularly, the jury was told that they should consider the extent to which the experts' opinions were consistent or inconsistent with the other evidence in the case.
>
> The other evidence before the jury was overwhelming, primarily in the form of the photographs of Sal's injuries. As the prosecutor argued on summation, the photographs of Sal's feet told the jury 'exactly what happened.' The injuries they showed had informed Andersen, the doctors, the nurses, Dr. Cooper, and Dr. Ajl exactly what the defendant had done and the jury could draw the same conclusions by looking at them. The photographs, the prosecutor

argued, told the jury 'how hot the water was . . . and tell you how long he held that child in there.' The jury appears to have agreed with the prosecutor that the photographs were pivotal, for their first note at the beginning of its deliberations was to see 'all photographs.' Their next two notes, sent almost simultaneously, were for Sal's hospital records, and to hear again the court's charge as to assault in the first, second, and third degrees. They did not ask to hear readbacks of any trial testimony.

Nor was there any question but that defendant caused those injuries. Defendant was home alone with the child at the time the injuries were caused and claimed that they occurred while he was filling the tub to give Sal a bath, obvious fabrication. First, there was no reason for the child to have ever been in the bathtub, because Andersen gave Sal his baths at night. The only care required of defendant that morning was to take Sal to school that morning. Second, the accounts defendant gave varied from having left the bathroom to get Sal's clothes, to being distracted by a neighbor knocking on the door, to having gone outside to smoke a cigarette. He said [he] was called back to the bathroom by the child's screams, and found Sal with his hand stuck in the hole in the bathtub and his feet in the hot water. That explanation – incredible on its face – was belied by Sal's words as testified to by his cousin, that defendant 'put me in the hot water.'

Equally damning was the consciousness of guilt defendant displayed that day. Nothing but consciousness of guilt explains defendant's words to Andersen when he called her to inform her of the burn, but made light of it, saying Sal was 'fine' and was 'running around playing.' The falsity of that statement was confirmed by the fact that Sal was unable to run around and play from the time of the injury to the time of trial almost two years later. Moreover, by defendant's own account, the burn happened at 11:00 a.m. If true, he delayed six hours in taking Sal to the hospital located virtually across the street from his house, allowing an infection to set in. Sal's mother knew as soon as she arrived home that immediate medical treatment was necessary from the appearance of the injury, the way the skin had simply melted away. The consciousness of guilt defendant showed by delaying to take such an obviously critically injured child to the hospital was powerful evidence for the jury's consideration.

Finally, Sal's statement to the emergency room doctor, properly admitted as discussed in Point I, above, that he did not get out of the bathtub because 'he wouldn't let me out,' confirms that defendant placed and held Sal in the scalding hot water until the second and

third degree burns were inflicted. That statement was consistent with the opinions of the People's experts that the burns were caused by immersion in hot water – opinions defendant does not now contest.

In light of this overwhelming evidence, there is no significant probability that the verdict would have been different had Dr. Ajl been precluded from opining that the burns were caused intentionally.

*Id.* at 40-43 (citations to trial appendix omitted).

The Appellate Division affirmed the conviction. *People v. Duhs*, 65 A.D.3d 699 (2d Dep't 2009). It determined that the child's statement was properly admitted because it fell under a hearsay exception and did not implicate the Confrontation Clause. *Id.* at 699-700. With regard to due process and the expert's testimony, the court declined to review the argument on the ground that it was unpreserved. *Id.* at 700. The court did not directly address the harmlessness (sufficiency of the evidence) issue, but stated that "[t]he defendant's remaining contentions are without merit." *Id.*

### 2. New York Court of Appeals

The New York Court of Appeals granted Duhs leave to appeal. *People v. Duhs*, 14 N.Y.3d 887 (2010). He obtained new appellate counsel, Erin Collins, Esq. Ms. Collins abandoned Duhs's ineffective assistance of trial counsel claim and concentrated on two arguments: (1) admission of Sal's statement, "He wouldn't let me out," without calling the child to the witness stand violated Duhs's confrontation rights; and (2) the boy's young age disqualified him from making a medically significant statement, so his declaration to Dr. Gold did not qualify for the hearsay exception for medical treatment. *See* Appellant's Br. to Ct. of App., ECF No. 8-13, at 2.

Duhs did not specifically make a sufficiency of the evidence argument, but with regard to harm, he stated that "[c]learly, the most compelling evidence that appellant intentionally harmed Salvatore was Salvatore's accusation, as relayed to the jury by Gold, that appellant 'wouldn't let [him] out' of the tub." *Id.* at 47. Duhs also contended, "The evidence of appellant's guilt was far from overwhelming, and 'there is a significant probability . . . that the jury would have acquitted the defendant had it not been for the error' in admitting this inadmissible hearsay." *Id.* at 57 (quoting *People v. Crimmins*, 36 N.Y.2d 230, 240-41 (1975)).

In response to Duhs's first argument, that the child should have been put on the witness stand, the State argued:

> Although in making these arguments, defendant does not invoke the Due Process Clause, defendant's theme on appeal is that admission of Sal's statement deprived him of a fair trial. That *due process* argument *was never raised in the trial court below and is unpreserved for appellate review*. It is also wholly meritless.
>
> Defendant asserts that Sal was competent to testify and the only reason the prosecutor would have omitted to call him was for unfair strategic reasons. On the contrary, at the age of four years old, Sal was not competent to give sworn testimony, and although his unsworn evidence was deemed admissible pursuant to C.P.L. § 60.20(2), it is unclear to what extent he would have been able to explain what had happened to him. Moreover, although Sal's unsworn testimony may have been admitted, it would have been legally insufficient, standing alone, to support defendant's conviction. C.P.L. § 60.20(3).
>
> Nevertheless, the People apparently intended to call him to the witness stand as late as February 7, 2007, the second-to-last day of testimony, when the prosecutor said he would be the People's final witness. The People then called their expert Dr. Ajl, the ACS supervisor Edgar Ramirez, Detective Hemmer, and nurse Rachel Lucente. At the end of the day, the prosecutor [] said that she would telephone defense counsel that night to inform him of whether or not she would be putting Sal on the witness stand. By the next morning, February 8, the People had made their decision, and intended to call only one more witness, Sal's ten-year-old cousin Elisa Barberia, who would testify that Barberia was with Sal's mother, Stacey

Anderson [sic], when Anderson arrived home, and Barberia testified to Sal's condition when they found him, the measures Ms. Anderson took to help, how Anderson 'scooped' Sal up to take him to the hospital, and Sal's statement in the car, that 'Babe put me in the water.'

At that point, if defendant felt entitled to a trial in which the victim testified, his remedy was to ask the Court for the opportunity to call Sal as a defense witness or to ask for a missing witness jury instruction. *People v. Gonzales*, 68 N.Y.2d 424, 428 (1986); *People v. Almodovar*, 62 N.Y.2d 126, 133 (1984); *People v. Knowels*, 187 A.D.2d 361 (1st Dept. 1992). Defendant demanded such a remedy with regard to another person on the People's witness list, Martin Anderson, Stacey Anderson's father. When defense counsel heard that the People's intended remaining witness did not include Anderson, defense counsel argued that Martin Anderson had relevant noncumulative evidence to give and demanded the opportunity to call him as a defense witness. The People arranged for him to be brought to the courthouse, and in fact, defendant called Mr. Anderson the sole defense witness. No similar request was made for Sal to be produced for possible testimony as a defense witness or a for a missing witness charge to be given.

In the absence of such a request, defendant should not now be heard to complaint that he was deprived of the opportunity to confront the 'primary witness' by admission of Sal's out-of-court statement. Obviously, defense counsel perceived either that such a missing witness charge would be denied, since Sal was unlikely to have material, noncumulative evidence to offer, or, more likely, that there was no strategic advantage to the defense in forcing the child to take the stand. But whatever the reason that defense counsel did not request a missing witness jury instruction or the opportunity to call Sal as a defense witness, defendant's relinquishment of his trial remedies should now be treated as a waiver of the issue.

Resp't's Br. to Ct. of App., ECF No. 8-14 at 62-64 (citations to trial appendix omitted)

(emphasis added).

Regarding the confrontation issue as a whole, the State argued that it is the testimonial nature of the statement at the time it was made, not its accusatory nature at trial, that needs to be examined to determine its admissibility over a Confrontation Clause objection. *Id.* at 56-61.

With respect to the second argument that the child was not of an age to make a statement subject to the medical treatment exception, the State contended the argument was unpreserved for appellate review.  *Id.* at 26.

In addressing the sufficiency of the evidence issue, *i.e.*, that Duhs would not have been convicted but for the admission of the child's hearsay statement, the State noted:

> [J]ust as the prosecutor said, the *absence of Sal's testimony did not defeat a verdict of guilty because of the other evidence in the case*, including Sal's statements the day of the crime.  Those statements included the one made to his mother, in the car on the way to the hospital, that 'Babe put me in the water,' as well as his statement to Dr. Gold, that 'he wouldn't let me out.'  But the prosecutor emphasized, even more than Sal's statements, that the injuries themselves 'screamed' to the jury what had happened.  Their severity and shape, two identical 'stocking' burns to both feet, ankles, and calves, demonstrated a deliberate dunking of a child into steaming hot water.  The burns told the jury 'all they needed to know.'  Those arguments, which asked the jury to draw reasonable inferences from the evidence at trial, were above reproach.  *People v. Halm*, 81 N.Y.2d 819, 821 (1993); *People v. Bailey*, 58 N.Y.2d 272, 277 (1983); *People v. Ashwal*, 39 N.Y.2d 105 (1976).
>
> Finally, any error in admitting Sal's statement is harmless beyond a reasonable doubt in light of the overwhelming evidence which showed that defendant caused the burns intentionally.  *People v. Crimmins*, 36 N.Y.2d 230 (1975); *see also People v. Eastman*, 85 N.Y.2d 265, 276 (1995).  Apart from the emergency room statement, the evidence showed that defendant lived in the home and would therefore have been familiar with the fact that the hot water in the house was extremely hot, and that steam rose from the water within seconds of turning on the hot water tap.  In addition, the tub was incorrectly installed, and the drain did not have a normal stopping mechanism.  For that reason, to fill the tub, one had to stuff a rag into the drain hole.  Those two circumstances, in combination with the extent of the burns all the way up Sal's calves, the symmetry between his two feet, and the bruises Sal had sustained to his torso, showed that defendant must have stuffed a rag into the drain hole, filled the tub with steaming hot water, seized Sal, and plunged him feet first into the water.
>
> Medical testimony to the extreme pain Sal would have felt, combined with the severity of the burns, necessarily means

defendant held him in the water for five to ten seconds heedless of
Sal's screams. Although defense counsel at trial elicited testimony
from the expert that higher water temperatures of 150 to 160 degrees
would have caused the burn in two seconds or less, defendant's
action of plunging the child into such outrageously hot water is
surely no less indicative of an intentional crime.

So testified the People's expert, Dr. Ajl, who had examined
thousands of burns to children, and had concluded that the stocking-
shaped burns on Sal's feet and lower legs, with their clear line of
demarcation, was virtually impossible to have occurred in any way
other than an intentional dunking into hot water.

In light of this overwhelming evidence of guilt, any error in
admitting Sal's statement to Dr. Gold was harmless beyond a
reasonable doubt. *Crimmins*, 36 N.Y.2d 230.

*Id.* at 66-68 (emphasis added).

The Court of Appeals affirmed the decision of the Appellate Division. *People v. Duhs*,

16 N.Y.3d 405 (2011). It stated that "[t]he only issues before us are whether the trial court erred

in allowing the pediatrician's testimony concerning the child's statement in evidence as germane

to the child's medical diagnosis and treatment, and whether its admission violated the

defendant's constitutional right to confront the witnesses against him." *Id.* at 407-08. It decided

that the "Supreme Court properly concluded that the child's statement was germane to his

medical diagnosis and treatment and therefore was properly admitted under that exception to the

hearsay rule." *Id.* The Court of Appeals explained that it accepted Dr. Gold's testimony that she

asked the child the questions at issue to determine the proper treatment. *Id.* According to the

"primary purpose test" articulated in *Davis v. Washington*, 547 U.S. 813, 822 (2006), the Court

of Appeals reasoned that "it is evident that the statement 'he wouldn't let me out' was not of

testimonial character" that would have implicated Duhs's confrontation rights. *Duhs*, 16 N.Y.3d

at 409. In denying Duhs's Confrontation Clause argument, the Court of Appeals did not rule on

whether the child should have been put on the stand.

### 3. United States Supreme Court

Duhs did not file a petition for a writ of certiorari from the Supreme Court following the decision of the Court of Appeals.

### iii. Collateral Proceedings

### 1. Coram Nobis

Duhs moved in the State sentencing court pro se for a writ of error coram nobis. He contended that: (1) his due process rights were violated when the trial court dismissed the Assault in the Second Degree count against him but did not dismiss the Endangering the Welfare of a Child count, which was predicated on the same conduct; (2) his speedy trial rights were violated when the prosecution did not submit a superseding indictment to the grand jury within 30 days and used excludable time on the original indictment towards the superseding indictment; (3) the court subjected him to double jeopardy when it dismissed the Assault in the Second Degree count then granted leave to the State to present the Assault in the First Degree count; and (4) his trial counsel was ineffective for not objecting to a facially insufficient indictment, and his Appellate Division counsel was ineffective for declining to raise any of these four arguments. *See* Appl. for Writ of Error Coram Nobis, ECF No. 8-17.

The State responded that Duhs's ineffective assistance of counsel claims were meritless because he "received meaningful representation" under New York law. *See* Opp. to Appl., ECF No. 8-18 at 9-10. It contended that his counsel reasonably selected the strongest claims and presented them to the Court of Appeals. *Id.* at 10. The State argued that the excluded claims were meritless because: (1) his due process claim was unpreserved for appellate review and that, even if the entire first indictment had been dismissed, C.P.L. 210.20(4) provides that a court may authorize representation of a case to a second grand jury; (2) the speedy trial claim was properly

denied by the trial court because the adjournments were excludable time under C.P.L. 30.30; (3) he was not subjected to double jeopardy because C.P.L. 40.30 defines a "previous prosecution" as one that terminated in a guilty plea or the trial stage of impaneling a jury, and the first indictment did not reach either point; and (4) trial counsel was not ineffective for declining to make motions or arguments that had little or no chance of success (citing *People v. Caban*, 5 N.Y.3d 143, 152 (2005)).  *Id.* at 11-13.

The Appellate Division denied Duhs's coram nobis motion.  *People v. Duhs*, 95 A.D.3d 1232 (2d Dep't 2012).  It decided that Duhs "failed to establish that he was denied the effective assistance of appellate counsel."  *See id.* at 1232 (citing *Jones v. Barnes*, 463 U.S. 745 (1983) and *People v. Stultz*, 2 N.Y.3d 277 (2004)).

The Court of Appeals denied Duhs's application to appeal the denial of coram nobis relief.  *People v. Duhs*, 19 N.Y.3d 996 (2012).

## 2.  Section 440 Motion

Duhs did not filed a motion pursuant to C.P.L. 440.10 for vacatur of the judgment against him based on evidence that was not in the trial record.

### iv.  Federal Habeas

#### 1.  District Court

On February 25, 2013, Duhs filed in this court a pro se habeas corpus petition pursuant to section 2254 of Title 18.  *See* Pet., ECF No. 1.  He raised three claims: (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; and (3) improper admission of hearsay that was in violation of his right to confront witnesses.  *Id.* at 6-7.  The court appointed Norman Trabulus to represent petitioner.  *See* ECF No. 5.

The State's primary argument against the ineffective assistance of appellate counsel claim was that the Appellate Division reasonably applied the *Strickland* standard in deciding counsel was not ineffective. Opp. Br., ECF No. 7-1, at 14-15 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Regarding ineffective assistance of trial counsel, the State contended the issue was unexhausted because it was not raised in the direct appeal. *Id.* at 12-13. And with respect to the confrontation issue, the State argued that Duhs failed to establish that the decision of the Court of Appeals was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* at 7 (citing 28 U.S.C. §§ 2254(d)(1), (2)). The State also contended that the child's statement, "He wouldn't let me out," "was made in the context of emergency medical treatment, and not in anticipation of litigation, and thus, its admission . . . against petitioner did not reflect the core evil the Confrontation Clause was designed to prevent." *Id.* at 7-8.

Duhs replied that the decision of the Court of Appeals was contrary to the United States Supreme Court's holdings in *Davis v. Washington*, 547 U.S. 813 (2006) and *Michigan v. Bryant*, 562 U.S. 344 (2011), which required it to conduct a "combined inquiry" encompassing the child's motive in responding to Dr. Gold's question. *See* Reply Br., ECF No. 34. He did not mention either of his ineffective counsel claims. Duhs dropped his ineffective assistance of trial counsel claim at the hearing on his petition. Hr'g Tr. of Dec. 24, 2014, ECF No. 48, at 60:15-61:21.

This court granted a writ of habeas corpus. *Duhs*, 83 F. Supp. 3d at 439. It rejected Duhs's ineffective assistance of appellate counsel claim as "frivolous," *id.* at 458, but found a violation of the Confrontation Clause. *Id.* at 465.

### 2. Court of Appeals for the Second Circuit

The Court of Appeals for the Second Circuit reversed. *Duhs*, 2016 WL 482174, at *1.

Its stated reasons were that the Confrontation Clause did not apply:

> The district court erred in its analysis by misapprehending the degree of deference accorded to state courts under federal habeas review. A petitioner requesting a writ of habeas corpus under § 2254 must show that the challenged state decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' 28 U.S.C. § 2254(d)(1). Under that standard, a writ of habeas corpus will issue only if 'a state court's application of federal law . . . is so erroneous that there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.' Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam) (internal quotation marks and citations omitted). Thus, even a showing of "clear error" will not suffice. White v. Woodall, 134 S. Ct. 1697, 1702 (2014).

> At the time the state courts addressed this case, it presented a close issue with no controlling Supreme Court precedent. Since the Supreme Court had never applied the 'combined inquiry' or objective understanding standards outside the law enforcement context, and indeed had suggested, albeit in passing dictum, that the Confrontation Clause might not apply at all to 'statements to physicians in the course of receiving treatment,' Giles, 554 U.S. at 376, any arguable deviation from the methodology used by the Supreme Court in the police context in assessing the 'primary purpose' of statements made in the course of medical treatment cannot be held an unreasonable application of Supreme Court law.

> Moreover, since the decisions of the New York Court of Appeals and the district court, the Supreme Court has decided a case close on its facts to this one. That decision makes it even clearer that the state courts' actions do not contravene clearly established Supreme Court precedent. Ohio v. Clark is the Supreme Court's first post-Crawford decision regarding questioning by anyone *other* than a law enforcement officer. In Clark, the Court applied the 'primary purpose' test to the questioning of a young child by a person not involved in law enforcement, but who, like the physician in this case, had a duty under state law to report suspected child abuse. The Court held, as the state courts did here, that the statements were nontestimonial. 135 S. Ct. at 2180-81. The Court ruled that statements to individuals who are not law-enforcement officers "are

much less likely to be testimonial than statements to law enforcement officers" and that "[s]tatements by very young children will rarely, if ever, implicate the Confrontation Clause." Id. at 2181-82. Even assuming for the sake of argument that <u>Clark</u> is distinguishable from the case before us, the Supreme Court's decision makes it apparent that the decision of the state courts in this case was not contrary to, or an unreasonable interpretation of, established Supreme Court law.

*Id.* at *2-3.

Duhs submitted a motion for a panel rehearing on the merits of his case. *See* Pet. for Panel Reh'g, *Duhs*, 2016 WL 482174 (No. 15-647). The Court of Appeals for the Second Circuit summarily denied the motion. *See* Order of Feb. 29, 2016, *Duhs*, 2016 WL 482174 (No. 15-647).

### 3. United States Supreme Court

At the non-evidentiary hearing on March 23, 2016, Duhs's attorney stated that he was drafting a petition in the Supreme Court for a writ of certiorari. *See* Hr'g of Mar. 23, 2016, ECF No. 60.

## III. Second Petition

Because the Court of Appeals for the Second Circuit rejected Duhs's Confrontation Clause argument, which was his strongest appealable issue, his remaining options for contending lack of due process are extremely limited. The limitations summarily are due to the sharp restrictions in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### a. Procedural Barriers

Duhs faces serious procedural barriers to filing a second habeas petition.

First, he has exceeded the one-year statute of limitations for habeas petitions, and he does not appear to qualify for equitable tolling. Second, to file a second habeas petition, Duhs would have to obtain permission from the Second Circuit Court of Appeals. It is unlikely that the court

would grant his request because he cannot satisfy the requirements of the governing federal statute.

i. Statute of Limitations

Duhs's first hurdle would be the one-year statute of limitations imposed by AEDPA. All of the dates from which the one year is measured have long passed. The statute reads as follows:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution on laws of the United States is removed, if the application was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Subsection (B) presents a clear barrier since there is no indication that Duhs has faced an impediment to filing a petition; he could not assert a newly recognized constitutional right under (C); and there is no newly discovered evidence pursuant to (D). Subsection (A) governs. Duhs's conviction became final on June 27, 2011, the last day that he could have appealed the decision of the Court of Appeals at the U.S. Supreme Court. One year from that date was June 27, 2012.

## 1. Tolling the Statute Under AEDPA

Pursuant to AEDPA, the one-year time limit for Duhs to file a habeas petition was tolled during the pendency of his coram nobis motion, but not long enough to allow him time to file a second petition. AEDPA provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2). In 2001, the Supreme Court held that the phrase "State post-conviction or other collateral review" does not include federal habeas petitions. *See Duncan v. Walker*, 533 U.S. 167, 172-73 (2001). Therefore, "the one-year limitations period is not tolled during the pendency of a federal habeas petition." *De Jesus v. Miller*, 215 F. Supp. 2d 410, 412 (S.D.N.Y. 2002).

Accordingly, the statute of limitations was tolled during the 254-day period that his coram nobis motion was pending – from November 28, 2011 to August 8, 2012. That extended his deadline to file a second habeas petition from June 27, 2012 to March 8, 2013. He timely filed his first habeas petition on February 25, 2013. If he were to file a second petition today, it would be more than three years too late.

## 2. Equitable Tolling

The Court of Appeals for the Second Circuit has recognized that the one-year limitations period may be equitably tolled "when extraordinary circumstances prevent a prisoner from filing a timely habeas petition." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (internal quotation marks and citation omitted). The petitioner "must have acted with reasonable diligence throughout the period he seeks to toll." *Id.* It is unlikely that Duhs would qualify for equitable tolling of the statute because his reasons for raising any remaining claims in a second

petition are not "extraordinary." *Id.* And even if they were, he probably would not be able to show that was diligent in seeking to raise his claims.

Courts have permitted equitable tolling of the statute in exceptional circumstances where it would be unfair to bar a prisoner's habeas petition. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("[T]he one-year period is a statute of limitations rather than a jurisdictional bar so that courts may equitably toll the period.") (citing cases). For example, a court equitably tolled the statute for a petitioner who detrimentally relied on the court's miscalculation of the period that remained for him to file a second petition. *De Jesus*, 215 F. Supp. 2d at 412-13. In another case, the Second Circuit decided that a corrections officer's confiscation of a prisoner's legal papers shortly before the filing deadline justified equitable tolling. *Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000). In a case where the petitioner filed his habeas petition just 87 days after the state denied him collateral relief, however, the court decided that his delay did not show reasonable diligence; as a result, his "case [did] not present extraordinary or exceptional circumstances warranting equitable tolling." *McGinnis*, 208 F.3d at 17. Considering that Duhs is now three years past the deadline, it is doubtful that his case merits tolling of the statute to present a second petition.

### ii. AEDPA Standard for Second Petition

Even if Duhs were able to overcome the time bar, he would face AEDPA's strict standards for a second habeas petition. The statute provides:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

> (2) A *claim* presented in a second or successive habeas corpus application under section 2254 that was *not presented in a prior application shall be dismissed unless*--

(A) the applicant shows that *the claim relies on a new rule of constitutional law*, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B) (i) *the factual predicate for the claim could not have been discovered previously* through the exercise of due diligence; and

(ii) the *facts* underlying the claim, if proven and viewed in the light of the evidence as a whole, *would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense*.

28 U.S.C. § 2244(b)(1)-(2) (emphasis added).

In order to raise a claim in a second petition that was not previously raised, the petitioner must first "move in the appropriate court of appeals for an order authorizing the district court to consider the application." *Id.* § 2244(b)(3)(A). A three-judge panel at the court of appeals "may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* § 2244(3)(B)-(C). The decision to grant or deny authorization for a second petition is not appealable and cannot be a claim in a petition for rehearing or a writ of certiorari. *Id.* § 2244(3)(E). Unless a court of appeals grants permission to file a second petition, the district court has no jurisdiction to entertain it. *See Burton v. Stewart*, 549 U.S. 147, 149 (2007) (vacating judgment of court of appeals to remand with instructions to the district court to dismiss the petitioner's second habeas application for lack of jurisdiction).

Duhs does not appear to satisfy AEDPA's requirements for a second petition. Any remaining due process claims he may have do not arise from a new rule of constitutional law under subsection (2)(A). And there does not appear to be any new evidence, pursuant to

subsection (2)(B)(ii), that could establish that no reasonable juror would convict him.  Moreover, if new evidence is discovered, Duhs would need to show he could not previously have discovered it through due diligence.  It is unclear how he could satisfy that requirement.  A panel at the Court of Appeals for the Second Circuit almost certainly would not give him permission to file a second petition.  And unless it did so, a district court would have no jurisdiction to rule on the petition.

### iii.  Exhaustion

While Duhs faces many procedural obstacles to filing a second petition, exhaustion might not be one of them.  AEDPA states that a habeas petition may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  Duhs did not raise the following claims in his direct appeal, but these issues were discussed in the briefs, so he has an argument that they are exhausted: (1) insufficient evidence to convict; (2) violation of due process because the child did not testify; and (3) ineffective assistance of trial and appellate counsel for failing to object or raise potential claims.  Duhs did not, however, raise the following argument, which remains unexhausted:  (4) improper admission of the child's statement, "Babe put me in hot water."

### iv.  Preservation

A review of the trial transcripts does not indicate that Duhs's trial attorney objected to any of the above errors.  His counsel did not object to the sufficiency of the evidence against Duhs or move to dismiss any charges at the end of the State's case.  The attorney did not object to the State's decision not to put the child on the stand or request a jury instruction on a missing witness.  Trial counsel also did not object to the admission of the child's statement, "Babe put me in hot water," through his 10-year-old cousin's testimony.  *See generally*, Trial Tr. of Feb. 8,

2007 at 340-42.  In addition, If Duhs is able to obtain permission to file a second petition, the State will have a strong argument that the issues were not preserved (and that even if preserved, they had no significant force).

v.   Other Procedural Considerations

There are a few other procedural considerations.

1.   Section 440 Motion

Duhs may consider filing a section 440 motion in the state trial court where he was convicted to vacate the judgment of the court.  There is no statute of limitations for such relief. *See* C.P.L. 440.10(1) ("At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . .").  Pursuant to subsection (h) of the State statute, a defendant may bring a claim if "the judgment was obtained in violation of a right of the defendant under the constitution of the state or of the United States."  *Id.* at § 440.10(1)(h).  But "the court must deny a motion to vacate a judgment when . . . the ground or issue raised upon the motion was previously determined on the merits upon appeal from the judgment . . . ."  *Id.* § 440.10(2)(a).  Because Duhs based his direct appeal on due process claims for insufficient evidence to convict, not putting Sal on the stand, and ineffectiveness assistance of counsel, he would appear not now to be able to raise those issues in a section 440 motion.

His counsel may consider, however, filing a section 440 motion on the ground that admission of the child's declaration, "Babe put me in hot water," was improper.

In any event, filing a section 440 motion does not revive the limitations period for a habeas petition.  *See McGinnis*, 208 F.3d at 17 ("[P]roper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run.");

28

*Castillo v. Ercole*, No. 07-CV-11256, 2009 WL 1492182, at *4 (S.D.N.Y. May 27, 2009) ("440 Motions do not restart the limitations period."); *Rashid v. Khulmann*, 991 F.Supp. 254, 259 (S.D.N.Y. 1998) ("Once the limitations period is expired, collateral review can no longer serve to avoid a statute of limitations."). While a 440 motion could in theory provide Duhs with relief from the judgment of conviction, it is doubtful that it would provide the basis for filing a second habeas petition.

## 2. Rule 60(b) Motion

Another option might be for Duhs to seek to revisit his first habeas proceeding through a Rule 60(b) motion, but filing such a motion would not be likely to advance his case. Rule 60(b) provides relief from a prior judgment for reasons such as mistake or fraud. *See* Fed. R. Civ. P. 60(b). In *Harris v. United States*, 367 F.3d 74 (2d Cir. 2004), a petitioner file a second petition for habeas relief that was dismissed by the Court of Appeals for the Second Circuit. *Id.* at 76. He then filed a Rule 60(b) motion to reopen his first habeas proceeding and add new claims. *Id.* The Court of Appeals for the Second Circuit denied his motion, stating, "[R]elief under Rule 60(b) is available for a previous habeas proceeding only when the Rule 60(b) motion attacks the integrity of the previous habeas proceeding rather than the underlying criminal conviction." *Id.* at 77. Moreover, such relief is available only in "extraordinary circumstances." *Id.* Because Duhs apparently has no claim that his first habeas proceeding was flawed, a Rule 60(b) motion would not help him.

## 3. Petition Directly to the U.S. Supreme Court

Duhs may still file a habeas petition directly in the Supreme Court pursuant to its original jurisdiction to hear such cases. The Supreme Court is not bound by the gatekeeping mechanism put in place by 28 U.S.C. § 2244(b)(3)(A) (requiring permission to file from the court of

appeals).  *See Felker v. Turpin*, 518 U.S. 651, 662 (1996).  That Court is, however, bound by the restrictions of §§ 2244(b)(1) and (b)(2), which in essence state that claims raised in a previous habeas petition must be dismissed, and any claims not previously raised must concern a new rule of constitutional law or some previously undiscovered factual predicate for an insufficiency of the evidence claim.  *Id.* at 662-63.  As discussed *supra* II.a.ii., Duhs probably cannot satisfy these restrictions.

> b.     Substantive Arguments

Assuming petitioner can leap the procedural barriers to present the merits of his case to this court, he could face serious substantive problems.  Potential substantive claims do not appear to provide adequate grounds for relief under present case law.  And there is a strong argument that since Duhs did not raise these claims in his first habeas petition, he forfeited them.

> i.     Weight of the Evidence

First, as the State argued in the direct appeal, even without the child's statement, "He wouldn't let me out," the prosecution arguably presented sufficient other persuasive evidence to allow a reasonable jury to convict.  The other evidence included: Sal's hearsay statement on the way to the hospital, "Babe put me in hot water," which was admitted without objection; expert testimony that Sal suffered immersion burns, not splash burns; and bruising on Sal's torso.  In addition, there was the circumstantial evidence that Duhs did not reasonably treat the burns – which probably became infected as a result – and that, instead, he called the mother and misled her by saying the child was "fine" and "running around playing."  The pictures of the stocking-shaped burn marks on Sal's legs and Duhs's inaction after the incident could reasonably have led the jury to determine that Duhs was more than negligent on the day in question.

> ii.     Putting the Child on the Stand

Second, the argument that the court should have required the child to testify instead of admitting his hearsay statements is weak. Duhs could have exercised his right to use this witness himself, which his counsel did not do. It is unlikely that Duhs could raise an ineffective assistance of trial counsel claim over this issue because a reasonable defense attorney would likely have made the same decision. Putting the injured child on the stand would probably have garnered sympathy from the jury for the prosecution.

iii.    Admission of Declaration "Babe put me in hot water"

Third, that the trial court admitted the child's hearsay declaration, "Babe put me in hot water," is likely an appealable error. The declaration does not fall into a New York or federal hearsay exception. It was not an excited utterance because it was allegedly uttered about half a day after the incident occurred. And the statement undoubtedly had a powerful effect on the jury. It was one of the key pieces of evidence the prosecution used to prove that Duhs intended to place the child in hot water. Because trial counsel did not object to the admission of the statement, however, Duhs would have difficulty succeeding on a claim that the court committed an error.

iv.    Ineffective Assistance of Trial and Appellate Counsel

Duhs already raised an ineffective assistance of trial counsel claim at the Appellate Division, which that court rejected. His appellate counsel dropped the claim at the Court of Appeals. It is doubtful that counsel's failure to object to the above errors would meet the standard for ineffectiveness articulated by the Supreme Court. *See Strickland*, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.").

In addition, any contention that Duhs's State appellate counsel was ineffective seems meritless. Duhs appears to have had reasonably good counsel from trial through appeals. The briefs submitted on his behalf are well-reasoned and thorough. Courts generally defer to an attorney's decision against raising claims that are not likely to help the client.

## IV.    Conclusion

The record and AEDPA appear to have foreclosed any reasonable possibility of effectively further prosecuting this petition. Twenty years of imprisonment is arguably overly punitive, particularly considering the residual question of guilt and due process, but that is not a factor likely to be considered on Cruel and Unusual grounds by a federal court. The Appellate Division had the power to reduce the sentence. *See* C.P.L. 450.10(2). But it left the term at twenty years.

Appointed counsel for petitioner and counsel for respondent have tried the issues effectively. There is nothing further this court can do at this time for petitioner, Michael Duhs.

The petition is dismissed on the merits.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: April 18, 2016
Brooklyn, New York